Hon. Vincent J. Sama First Deputy Commissioner and Counsel New York State Division of Housing and Community Renewal
You have asked whether the Division must compensate the Rent Stabilization Association when the assets of the New York City Conciliation and Appeals Board are transferred to the Division as of April 1, 1984.
Residential rental properties in New York City are subject to either of two regulatory systems, rent control or rent stabilization as authorized by the Local Emergency Housing Rent Control Act (L 1962, ch 21). New York City has provided for rent control of housing completed before February, 1947, with the rent control apparatus to be administered solely by a city agency, the Department of Housing Preservation and Development (Administrative Code of the City of New York, §§ Y51-1.0 to Y51-18.0).
Unlike rent control, rent stabilization, which applies to housing completed after February, 1947, permits substantial self-regulation by the real estate industry. Created by the Rent Stabilization Law of 1969 (id., §§ YY51-1.0 to YY51-8.0), the rent stabilization mechanism is, until April 1, 1984, administered by four bodies. A real estate industry stabilization association (Association) is an organization composed of owners of residential properties subject to the Rent Stabilization Law (id., § YY51-6.0); the New York City Department of Housing Preservation and Development supervises the self-regulatory rent stabilization process (id., §§ YY51-4.0[c], 6.0[b][2]); the New York City Conciliation and Appeals Board resolves landlord-tenant disputes and hears owners' hardship applications (id., § YY51-6.0[b][3]); and the New York City Rent Guidelines Board issues annual rent adjustment guidelines (id., § YY51-5.0).
The Association is a voluntary organization whose membership is open to any owner of residential property that is subject to the Rent Stabilization Law (id., § YY51-6.0[b][1]). If an owner elects not to join, his property becomes subject to the rent control provisions of Title Y (id., § YY51-4.0 [a]). Under section YY51-6.1(b)(2), the Association must adopt a rent stabilization code, to which each member must adhere (id., § YY51-6.0 [b][4]). In addition, the Association must establish the Conciliation and Appeals Board (id., § YY51-6.0[b][3]); however, all members of that Board are appointed by the mayor with the City Council's approval (ibid.). The Association is required to impose membership dues solely to be used to defray its reasonable administrative expenses (id., § YY51-6.0[c][12]). The compensation of the Board is funded solely by the Association (Code of the Real Estate Industry Stabilization Association of New York City, Inc., § 31).
The nine member Conciliation and Appeals Board (CAB) has two principal functions. It receives and acts upon tenant complaints and hears appeals from owners claiming hardship under the fair rent increase levels (id.,
§ YY51-6.0[b][3]).
In rejecting an attack on the New York City Rent Stabilization Law as an invalid delegation of the legislative authority of the City to a private association, the Court of Appeals characterized the CAB as a governmental agency (8200 Realty Corporation v Lindsay, 27 N.Y.2d 124, 133-134
[1970]). The right of any member aggrieved by an action of the Association to seek review before the CAB "seems a sufficient answer to the suggestion that the City has yielded a type of judicial power to the association" (id., p 133). Further, the Court emphasized that the appointment of all members of the CAB is by the mayor, and that the Association has no function in the appointment process (id., p. 133). The Court found that the responsibility of the Association to pay the salaries of the Board and the expenses of its office did not change the governmental character of the CAB (ibid.). It explained that the practice of having a regulated industry supply the funds expended by a public regulatory agency is common (ibid.).
In 1974 (ch 576, § 6[e]), the Legislature authorized the CAB to acquire, hold and dispose of personal property and to accept gifts, grants, loans and other property or financial assistance from the federal, state or city government or from any other source. The July 29, 1983 memorandum from Mr. Shlufman of your staff indicates that the Association has since its inception totally funded the expenses of the CAB (see, also, 8200 Realty Corporation v Lindsay, supra, at p 134).
Effective April 1, 1984, the administration of the rent stabilization system is to be transferred from the CAB to the State Division of Housing and Community Renewal (Division) (L 1983, ch 403, § 16). All CAB assets and records on that date "shall become the property of the" Division, and are to beo delivered to its custody (id., § 18). The Division will succeed to the powers of the CAB (id., § 9). The Association and its rent stabilization code are to be continued, and the City will continue to have approval power over the Association's code (ibid.).
The Legislature provided that the assets of the CAB "shall become the property of the" Division as of April 1, 1984 "and shall be delivered to the custody of such division as directed by the commissioner" (L 1983, ch 403, § 18). This language appears to require an automatic transfer of the assets of the CAB to the Division at the time the Division succeeds to its functions. Certainly if the Legislature had intended that the Association receive compensation for the assets to be transferred, it could easily have so provided. The bill jacket for chapter 403 does not indicate any intent that the Association is to be compensated.
Indeed, at the time of passage of chapter 403, it was clear under the City's Rent Stabilization Law that the Association, as a condition for receiving the benefits of the stabilization law, was responsible for establishing the CAB, and defraying its administrative expenses. The CAB was a governmental body. As such, the property here at issue is that of the CAB, regardless of the source of funding.
Mr. Shlufman of your office has informed us that the only assets in controversy are those purchased by the CAB in its name using funds provided by the Association. It seems clear under section 18 of chapter 403 that these are assets of the CAB subject to automatic transfer. As to other assets and office space leased by the Association for use by the CAB, Mr. Shlufman has indicated that the Division will pay remaining rentals under unexpired leases as of the time of transfer and will subsequently enter into new leases if necessary. Thus, it is not necessary to discuss this second category.
We conclude that the assets of the Conciliation and Appeals Board, established under the provisions of the New York City Rent Stabilization Law, on April 1, 1984 will automatically and without consideration become the property of the New York State Division of Housing and Community Renewal.